UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Toni Wallace,                    :   Case No. 1:09-cv-382
                                 :
     Plaintiff,                  :
                                 :
vs.                              :
                                 :
Commissioner of Social Security, :
                                 :
     Defendant.                  :

**ORDER**

Before the Court are the Commissioner's objections to the Report and Recommendation of the Magistrate Judge.  (Doc. 16) The Commissioner objects to the Magistrate Judge's recommendation that this Court vacate the Commissioner's denial of disability benefits to Plaintiff, and remand this matter for further administrative proceedings.  (See Doc. 14, Report and Recommendation)  For the following reasons, the Court accepts the Magistrate Judge's recommendation.

**FACTUAL BACKGROUND**

The Magistrate Judge's Report thoroughly sets forth the procedural history of Plaintiff's application for benefits, and accurately recites the relevant medical evidence in the record. Briefly summarized, Plaintiff Toni Wallace was injured at work on June 10, 2003.  She worked as an aide at a nursing home, and was attempting to assist a patient who was falling off a bed.  She was originally diagnosed with cervical and thoracic strain.  She

-1-

applied for worker's compensation benefits, as she could not perform her job duties; a state BWC physician found she could return to work on July 8, with restrictions on carrying, pushing and pulling. An MRI on July 30, 2003 revealed mild disc herniation at C5-C6 and C6-C7.

Wallace continued to complain of pain in her neck and back, and between her shoulder blades that migrated up her neck and down her spine. She also experienced numbness and tingling in her left arm. She was treated by Dr. Shapiro, at the Mayfield Spine Institute, from September to December 2003, and underwent physical therapy during this period. She was referred to Dr. Greiner, a neurosurgeon, in December because of her continued pain complaints. Dr. Greiner suggested that Wallace undergo a cervical disc fusion operation. That surgery was delayed due to other adverse health conditions, but eventually on May 13, 2005, Wallace underwent disc decompression and installation of a plating system. She was restricted post-surgery from lifting more than ten pounds, and urged to begin a walking program. While her initial progress was positive, she complained of significant neck and shoulder pain by July. She again attended physical therapy in August and September 2005, and continued reporting pain levels between 6-9 and 10.

Another cervical MRI was taken on September 24, 2005, which showed mild disc bulging at T3-T4, with a suggestion of a

thornwald cyst based on prominent adenoid tissue.  In October, Wallace was first seen by Dr. Griffin, a pain management specialist, in connection with her worker's compensation claim. She continued to treat with Dr. Griffin from 2006 through 2008, seeing him approximately once a month.  His office notes through this time document various symptoms and complaints by Wallace, including muscle weakness, tenderness, positive Neer and Hawkins signs, paresthesias and numbness primarily in her left arm and fingers; decreased range of motion at varying levels; and radicular pain in the C6, C7 and C8 nerve root distribution patterns.  (See TR 255-266 and 344-383, Griffin offices notes from 2006 through June 23, 2008.)  On June 2, 2006, Dr. Griffin opined that the intensity of symptoms and the pain that Wallace described were customarily seen based on the degree of physical findings he described in his notes.  (TR 250-251)

In December 2005, Dr. Greiner noted that while Wallace's post operative tests revealed no nerve compression and that she was healing well from surgery, Wallace was complaining of continued pain in her neck and into her left arm.  Based on a physical examination conducted by a Dr. Pearson (whose records are not included in the administrative record), who apparently found Wallace to have a full range of motion and normal neurological results, Dr. Greiner told Wallace that he had no other ideas on how she might manage her pain.

-3-

Three other physicians evaluated Wallace's condition.  Dr. Goldfarb, a Board-certified orthopedic surgeon, conducted a physical exam on March 22, 2006 at the request of the BWC.  Dr. Goldfarb noted her limited cervical range of motion and muscle tenderness.  She had 4/5 strength in her upper extremities, and a positive Spurling's sign with radicular pain in both of her arms.[1]  Despite this clinical observation, Goldfarb noted that her symptoms were not consistent with radiculopathy, but were consistent with neck pain, were chronic and were unlikely to improve.  Dr. Goldfarb concluded that Wallace was not employable and would be permanently disabled.  (TR 246-248)

The Ohio BWC also ordered an evaluation of Wallace by Dr. Ramirez, a neurosurgeon, who physically examined Wallace on August 24, 2007.  Dr. Ramirez noted bilateral muscle spasm and limitation of movement.  He found normal upper extremity strength, but hypesthesia in her left hand and forearm.  Her thoracic spine was tender to palpitation, and he observed that Wallace appeared to be in a significant amount of pain.  He could not detect an objective, definitive neurological defect that explained her left arm symptoms, but assessed a 29% whole-person impairment for her allowed worker's compensation conditions (neck sprain, thoracic sprain, and C5-6, C6-7 herniated discs).

--------

[1] The Spurling's test involves extension of the neck and axial compression of the spine, and can be used to confirm cervical radiculopathy.

-4-

A physical residual functional capacity assessment was performed by Dr. Albert on February 15, 2007 on behalf of the state concerning Wallace's disability application. (TR 310-317) Dr. Albert opined that Wallace could occasionally lift 20 pounds, and frequently lift ten pounds; she could stand, walk and/or sit for six hours during an eight hour day; and she had unlimited ability to push and/or pull. She could frequently climb stairs and occasionally crawl, but never climb ladders, ropes or scaffolds. She had no restrictions in balancing, stooping, kneeling, crouching or crawling. She was limited in reaching overhead due to her prior surgery and cervical pain. Dr. Albert's brief written explanation for these findings is based upon the December 2005 surgical follow-up studies which showed good healing of the spinal fusion and a lack of nerve compression. Dr. Albert cited the October 2006 MRI showing mild changes at C6-7, but also referenced her trigger point tenderness and positive left-side Neer, as well as numbness in her left fingers and her complaints of headaches due to neck pain. Dr. Albert answered "yes" to the question of whether the severity or duration of her symptoms is disproportionate to her medically determinable impairments, without further explanation. He also stated that the findings were "partially consistent with allegations," again with no explanation of what he found consistent or what "allegations" he was referring to. Finally,

-5-

Dr. Albert's report states that he did not review any treating or examining source statements concerning Wallace's physical capacities. (TR 316)

The ALJ conducted an evidentiary hearing on October 9, 2008, at which Wallace testified concerning her symptoms and her physical restrictions.  A vocational specialist was then asked a hypothetical question that adopted Dr. Albert's RFC.  The VE identified available unskilled light jobs that Wallace could perform consistent with those restrictions.  The ALJ also posed a second hypothetical question, asking about jobs for someone who could frequently lift five pounds and occasionally ten pounds; stand for 30 minutes, and walk half a block; could not bend or crouch, and could only occasionally reach overhead or climb stairs.  Any work would be limited to simple, routine and repetitive tasks, free of fast-paced production requirements, involving simple decisions with few if any workplace changes.  The expert stated that such an individual could not perform the light-duty jobs she previously identified.  However, such an individual could perform sedentary, unskilled work such as an inspector or tester.  Approximately 100 jobs locally and 90,000 nationally would fit those restrictions.  Additional clerical positions involving collating, shredding, or clerical support, would also fit the restrictions, with 800 jobs locally and 144,000 nationally.  (TR 51-53)

-6-

The ALJ's written decision found that Wallace was not disabled. The first four steps of the sequential evaluation process performed by the ALJ are not in dispute. Wallace meets the insured status requirements, she has not engaged in substantial gainful activity since her injury, and she has severe impairments of degenerative disc disease in the cervical (with discectomy and fusion) and thoracic spine, depressive disorder, and borderline intellectual functioning. Wallace's impairments, alone or together, do not meet or exceed the listings. Therefore, the ALJ proceeded to step five to determine Wallace's residual functional capacity. The ALJ adopted the physical restrictions found in Dr. Albert's report, and added the psychological restrictions of her ability to understand, remember and carry out simple and moderately complex tasks in a static work setting where changes are few, and expectations are clearly defined. (TR 14)

The ALJ summarized the medical evidence from Dr. Greiner and Dr. Griffin, and found that the record did not support Wallace's own descriptions of her symptoms and limitations. The ALJ discounted Dr. Goldfarb's opinion, as he performed a one-time independent evaluation and believed that Wallace was "virtually bedridden." (TR 16) The ALJ also found that Goldfarb's opinion was based primarily upon what Wallace told Goldfarb about her pain, and Goldfarb stated that her symptoms were not consistent

-7-

with radiculopathy.  Dr. Ramirez's opinion allowing a 29% whole person impairment did not support the conclusion that Wallace was unable to work.  Based upon Dr. Albert's restrictions, the ALJ cited the vocational expert's testimony that there were unskilled light-duty jobs available that Wallace could perform, including stock and order clerk, cleaner, and food preparer.  Therefore, the ALJ concluded that Wallace was not disabled and not entitled to benefits.

The Appeals Council denied Wallace's request for review, and she thereafter filed her complaint in this Court.

### DISCUSSION

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision.  "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion."  LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of some fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence,

the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).  Moreover, the ALJ need not accept a medical opinion that a claimant is "disabled" (and therefore unemployable) as that determination rests with the Commissioner under 20 C.F.R. §404.1527(e)(1).

The district court reviews de novo a magistrate judge's report and recommendation regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

The Commissioner objects to the Magistrate Judge's Report, arguing that the ALJ properly gave more weight to Dr. Albert's opinion than those of the other physicians.  The Commissioner notes that the ALJ cited the fact that Wallace's treating physicians had not offered an opinion on Wallace's specific physical limitations, supporting his decision to credit Dr. Albert.  By rejecting the ALJ's decision, the Commissioner

contends that the Magistrate Judge misapplied the substantial evidence standard.  So long as the ALJ explains his reasons for discrediting Dr. Goldfarb and relying on Dr. Albert, and cites evidence in the record to support those reasons, the Commissioner argues that the Court must affirm the ALJ even if it disagrees with his ultimate conclusion.  He cites <u>Ealy v. Commissioner</u>, 594 F.3d 504 (6th Cir. 2010), which noted that in some instances, state reviewers' opinions may be entitled to greater weight than those obtained from treating or examining sources.

The Court concludes that the ALJ erred in relying almost exclusively upon Dr. Albert's assessment.  Albert did not examine Wallace, and his brief written comments indicate that he relied almost entirely upon the "success" of Wallace's fusion surgery, and the 2006 MRI which did not document any nerve impingement in either the cervical or thoracic spine.  Albert does not explain his opinion that Wallace's symptoms and reported pain are inconsistent with her impairments, and his rather cryptic comment that "findings partially consistent with allegations" is also completely unexplained.  Moreover, there is no indication that Dr. Albert reviewed any of Wallace's records other than those pertaining to Wallace's surgery and the subsequent MRIs.

The Magistrate Judge also concluded that the ALJ erroneously rejected Dr. Goldfarb's opinion that Wallace was totally disabled.  The ALJ correctly stated that Goldfarb was not a

treating physician, as the record is clear that he performed a one-time independent medical evaluation for the BWC. His RFC (TR 249) found that Wallace could not perform any physical exertions and that she was "totally disabled." The ALJ rejected this opinion because it was based primarily on what Wallace told Goldfarb about her level of pain. The ALJ contrasted Goldfarb's conclusion with that of Dr. Ramirez, who concluded that Wallace has a whole-body impairment of 29% but did not conclude that she was precluded from all employment. The Commissioner correctly notes that the ALJ need not accept Dr. Goldfarb's ultimate conclusion that Wallace is disabled. But his findings and objective observations are not entirely based upon Wallace's subjective complaints, which the ALJ did not address.

Moreover, the ALJ discounted any reliance on Dr. Griffin's opinions, and criticized his office notes as containing "almost boilerplate" entries. (TR 15) Yet a close review of those notes reveal that the history and physical examination sections of Griffin's notes, which are most relevant to Wallace's documented impairments, record differing levels of reported symptoms and pain, and different recommendations over time. The ALJ also criticized Griffin for not ordering more x-rays or diagnostic studies in view of Wallace's varying complaints. But there is nothing in the record suggesting that additional tests or x-rays would be beneficial in obtaining further treatment or in arriving

at an appropriate RFC assessment, given the levels of pain and areas of restriction Wallace reported from visit to visit.

The Social Security regulations governing treating physician opinions provide that, "... if the opinion of the treating physician as to the nature and severity of a claimant's condition is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record," it will be given controlling weight. Rogers, 486 F.3d at 242 (internal citation and quotations omitted; emphasis added). If the Commissioner finds that a treating physician's opinion is inconsistent with or unsupported by the record, the following factors should be discussed in determining the weight that should be accorded that opinion: (1) the length of the treatment relationship and frequency of contact; (2) the nature and extent of that relationship; (3) the evidence provided to support the opinion; (4) consistency between the opinion and the entire record; (5) the treating physician's specialty; and (6) any other relevant factors such as the extent to which the medical source is familiar with other information in a claimant's case record. See 20 C.F.R. §416.927(d)(2)-(6). The Commissioner may reject a treating physician's determinations "when good reasons are identified for not accepting them." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).

-12-

The Court finds that the ALJ's reasons for rejecting the observations of the treating and examining physicians, and relying almost exclusively upon Dr. Albert's RFC, are not sufficient under the factors set forth in the regulations.  The Court therefore concludes that substantial evidence in the record does not support the ALJ's findings on Wallace's residual functional capacity.

The Commissioner also objects to the Magistrate Judge's recommendation that this matter be remanded for further evaluation of Wallace's credibility and her subjective pain complaints.  The ALJ discounted Wallace's descriptions, finding they lacked credibility to the extent that they were inconsistent with his RFC findings.  Because the ALJ's RFC findings are not supported by substantial evidence in the record, the remand will permit the opportunity for the ALJ to evaluate Wallace's credibility in light of further consideration of the medical evidence and Wallace's appropriate RFC assessment.

## CONCLUSION

The Court concludes that the Commissioner's findings relating to Plaintiff's RFC are not supported by substantial evidence in the record.  As a proper RFC assessment is critical to the ultimate determination of disability, remand to the ALJ is appropriate in this case.  The Court therefore accepts the Magistrate Judge's recommendation.

-13-

The Court hereby remands this matter to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

SO ORDERED.

DATED: February 25, 2011      <u>s/Sandra S. Beckwith</u>
Sandra S. Beckwith
Senior United States District Judge