**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TONI WALLACE,                                Case No. 1:09-cv-382

        Plaintiff,                            Beckwith, J.
                                                     Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

This case involves a Social Security disability benefits appeal in which this Court reversed the non-disability finding of the Administrative Law Judge ("ALJ") and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g), Sentence Four. Plaintiff has now filed a Motion seeking attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Commissioner of Social Security ("Commissioner") opposes Plaintiff's motion.

**I. Background**

After ALJ Donald A. Becher denied Plaintiff's application for disability insurance benefits, this Court reversed that decision by adopting a Report and Recommendation ("R&R") filed by Magistrate Judge Timothy S. Hogan.[1] The Commissioner filed timely objections to Judge Hogan's R&R (Doc. 16), to which Plaintiff filed a response (Doc. 17). Overruling the Commissioner's objections, United States District Judge Sandra S. Beckwith filed an order adopting the R&R as the opinion of the Court. (Doc. 18).

---

[1] Then Magistrate Judge Timothy S. Hogan retired from this court in October 2010, ultimately resulting in reassignment of this case to the undersigned. (*See* Doc. 23).

1

Plaintiff now seeks an award of attorney's fees under the EAJA, 28 U.S.C. § 2412. Plaintiff seeks a total award of $4,413.75 based on 26.75 hours of work at the hourly rate of $165.00. (Doc. 20). In his response in opposition to Plaintiff's motion for fees, the Commissioner argues that an award of fees should not be made because the Defendant's litigation position was substantially justified. (Doc. 22 at 2). Specifically, the Commissioner reiterates his reasons for concluding that the ALJ was correct to rely on the testimony of the state's consultant, Dr. Albert. (Doc. 22 at 2).

## II. Analysis

### A. Standard of Review

The EAJA provides that:

> [A] court shall award to a prevailing party…fees and other expenses…incurred by that party in any civil action…including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In this case, Plaintiff is a "prevailing party" as defined in the statute; therefore EAJA fees "shall" be awarded unless the Commissioner's position was "substantially justified" or can demonstrate that "special circumstances" exist. *Id.* The Commissioner does not argue that "special circumstances" exist, but does argue that fees should be denied because his prior litigation position was "substantially justified."

### B. Substantial Justification

The Supreme Court has defined "substantial justification" to mean the Commissioner's position during litigation was "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person," or that the position had

a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted); *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989). The Commissioner's position during litigation can be substantially justified even if a court ultimately finds his decision to be erroneous or not supported by substantial evidence. *See Pierce*, 487 U.S. at 566 n.2.; *see also United States v. 2323 Charms Rd.*, 946 F.2d 437, 440 (6th Cir. 1991). However, the Commissioner has the burden to show that his litigation position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 416, 124 S. Ct. 1856, 1867 (2004); *United States v. True*, 250 F.3d 410, 419 n.7 (6th Cir. 2001).

In the R&R previously adopted by the Court, Magistrate Judge Hogan found the ALJ's non-disability finding was subject to reversal and remand because the ALJ: (1) improperly weighed the opinion of the examining physician, resulting in a residual functional capacity ("RFC") finding that was not supported by substantial evidence; and (2) incorrectly concluded that Plaintiff's subjective complaints of pain were not a product of her medically determinable impairment. (*See* Doc. 14 at 22, "In conclusion, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to properly evaluate the medical source opinions and assess plaintiff's credibility and subjective complaints of pain.").

In arguing the Commissioner's prior litigation position was "substantially justified," the Commissioner has limited his argument to the Court's first finding - that the ALJ erred in determining the weight to be given to the medical source opinions. The Commissioner has wholly failed to address the Court's second determination - that the ALJ also erred in assessing Plaintiff's credibility and subjective complaints of pain. I

conclude that an award of fees should be made, because the Commissioner's position was not "substantially justified" in law or fact.

**1. Medical Source Opinions**

In her statement of specific errors (Doc. 11), Plaintiff identified three errors committed by the ALJ, each of which were sustained by the magistrate judge in his R&R (Doc. 18). In regard to the medical source opinions (the first assignment of error), which invariably affected the impact of the hypothetical questions posed to the vocational expert (the third assignment of error), the Court described Plaintiff's arguments as "well taken." (Doc. 14 at 21).

When weighing the medical opinions of both examining and non-examining physicians, the ALJ must adhere to the standards set forth in 20 C.F.R. §404.1527. Those standards generally require an ALJ to give greater weight to the opinion of an examining consultant than to the opinion of a non-examining consultant. *See* 20 C.F.R. §404.1527(d)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). The greatest weight, however, is reserved for the opinions of treating physicians. *See* 20 C.F.R. §404.1527(d)(2); *see also Blakely v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

4

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakely*, 581 F.3d at 406.

Exceptions to the weight mandated by the treating physician rule arise only where the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record. *See id.*; Soc. Sec. Rul. 96-2p. When the treating physician's opinion is not well-supported or is inconsistent with other evidence, the ALJ must use a set of factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406. "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakely*, 581 F.3d at 408, quoting Soc. Sec. Rul. 96-2p.

When the treating physician's opinion is not given controlling weight, the ALJ must provide good reasons for doing so. Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakely*, 581 F.3d at 406-407, quoting Soc.

5

Sec. Rul. 96-2p. Only then, after examining whether the treating physician's opinion is supported by objective evidence, considering the factors that determine how much weight should be afforded the opinion, and providing a good reason for not following the treating physician rule, can the ALJ properly allocate less weight to the treating physician's opinion. *See id.*, 581 F.3d at 406; *see also* Soc. Sec. Rul. 96-2p.

In his hearing decision, the ALJ adopted the RFC finding of the state's non-examining consulting physician, Dr. Nick Albert. (*See* Doc. 8-2 at 138-145). Although Dr. Albert was not even mentioned by name in the ALJ's hearing decision, his RFC recommendation was adopted in its entirety. (*Id.;* Doc. 7-2 at 15). The ALJ gave considerable weight to the state's reviewing physician and, conversely, very little weight to another consulting physician who actually examined the Plaintiff, Dr. Goldfarb. (Doc. 7-2 at 17). The ALJ explained that he was giving Dr. Goldfarb's opinion "very little weight" for the following reasons:

> As for opinion evidence, in March 2006, Dr. Goldfarb performed a one-time independent medical evaluation for the claimant's Worker's Compensation claim. In his report, he initially stated that she would not be able to return to her former position, then said she was unable to return to any type of work (Exhibit 7F/3). Finally, he appended a functional assessment that, if credible, would render the claimant virtually bedridden (Exhibit 7F/4). Dr. Goldfarb's opinion is given little weight as he appears to have based it primarily on what the claimant told him about her level of pain . . . .

(*Id.* at 17).

In addition to dismissing much, if not all, of Dr. Goldfarb's medical opinion, the ALJ also gave little weight to the treating physicians:

> No treating source (Dr. Greiner, Dr. Griffin, or Dr. Kim) has offered any opinions as to her [Plaintiff's] functional limitations; therefore, it is not unreasonable to accept the limitations found by the State agency's medical consultant [Dr. Albert] in Exhibit 12F.

6

*Id.*

Upon judicial review, the Court found the ALJ's reasons for weighing the various medical opinions to be inadequate. The Court provided three reasons in support of affording Dr. Goldfarb's opinion more weight than that of the state's reviewing physician, Dr. Albert. First, Dr. Goldfarb was able to examine the Plaintiff rather than merely conduct a records review: "[I]t is the ALJ's reliance on the opinions of a paper reviewer over those of Dr. Goldfarb which is unsupported by substantial evidence." (Doc. 14 at 19). Second, Dr. Goldfarb's opinion was comparable to and consistent with the opinions provided by treating physicians. (*See* Doc. 14 at 20, noting Dr. Goldfarb's were "consistent with other physician provided evidence of record."). Finally, the Court noted that Dr. Goldfarb - like Plaintiff's treating physicians- was a specialist, whereas the non-examining consultant was a general practitioner.

> Dr. Goldfarb is an orthopedic surgeon, Dr. Ramirez is a neurosurgeon, Dr. Griffin is a pain management specialist, while Dr. Albert is a family medicine/general practitioner. Clearly examining sources, with support from plaintiff's treating physician, are in a far better position to opine on the practical impact in terms of functional limitations occasioned by plaintiff's clinical symptoms and examination results. Dr. Albert bases his RFC findings on nothing more than the paper file and offers no explanation for the exertional limitations he establishes beyond a recitation of plaintiff's impairments and the conclusion that plaintiff 'showed good healing of her fusion and no neural compression and 'She had reached maximum medical improvement and no further recommendations.'

(Doc. 14 at 20-21). The specialization of a physician is one factor that should be considered when an ALJ strays from the treating physician rule. *Blakely*, 581 F.3d at 406.

The ALJ's decision was reversed and remanded, in part, based on his improper weighing of the opinion of the examining physician, which led to an RFC finding that

7

was not supported by substantial evidence. (Doc. 14 at 20). Both because Dr. Goldfarb was an examining physician and because his opinions were aligned with the opinions of Plaintiff's treating physicians, the Commissioner should have afforded more deference to the opinions of Dr. Goldfarb than to those of Dr. Albert as the non-examining consultant. (*See* Doc. 14 at 20); *see also Blakely*, 581 F.3d at 406.

The Commissioner's response to Plaintiff's motion for fees reiterates his original defense of Dr. Albert's RFC finding, noting that Dr. Albert's opinions are compatible in some respects with the opinions of Plaintiff's treating physicians. (Doc. 22 at 5). The Commissioner characterizes Dr. Goldfarb's opinion as extreme insofar as he opined that the Plaintiff was "unable to return to any type of work." (Doc. 22 at 3, quoting Tr. 248-249). The Commissioner argues that his litigation position in support of Dr. Albert was eminently reasonable, because Dr. Albert relied upon an MRI that showed only "mild disc bulging," whereas Dr. Goldfarb relied on the same MRI in opining that Plaintiff was disabled. (Doc. 22 at 4-5).

Despite some hand-picked evidence supporting Dr. Albert's opinions, it is clear that the ALJ applied an incorrect legal standard for assessing the weight to be given to the medical sources, and disregarded the treating physician rule. Ultimately, this error renders the Commissioner's litigation position less than substantially justified; therefore, Plaintiff is entitled to an award of attorney's fees. *See Meyers v. Heckler*, 625 F. Supp. 228, 235 (S.D. Ohio 1985)(refusing to find the government's position to be "substantially justified" when an ALJ fails to apply the correct legal standard); *Howard v. Heckler*, 581 F. Supp. 1231, 1233-34 (S.D. Ohio 1984); *see also Gutierrez v. Barnhart,* 274 F.3d

1255, 1259 (9th Cir. 2001) (government's position not substantially justified where ALJ failed to comply with applicable Social Security regulation).

### 2. Subjective Complaints of Pain

In addition to the ALJ's critical error regarding the assessment of medical source opinions, this Court previously found that the ALJ erred in assessing Plaintiff's credibility and subjective complaints of pain.

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. . . The ALJ has determined that plaintiff has a medically determinable impairment . . . The question, then, is whether plaintiff's impairment has produced the disabling pain about which she complains. The Court concludes that it has produced that pain.

(Doc. 14, at 21-22)(internal citations omitted).

The Court reviewed Plaintiff's history of back pain dating to January 2003. Plaintiff underwent surgery, non-surgical treatment, physical therapy, and narcotic medication. "Over time, plaintiff's complaints of pain have been consistent and her treating physicians, Drs. Greiner and Griffin, have documented her complaints and attempted to treat her pain accordingly." (Doc. 14 at 22). In addition, the Court cited to three MRI exams of the cervical spine, each of which "have consistently revealed abnormal findings." (*Id.*).

The Court determined that the ALJ erred in concluding that Plaintiff's subjective complaints of pain exceeded the symptoms that her medically determinable impairment could have caused. (*See* Doc. 7-2 at 17). In so doing, the Court found that the ALJ had

failed to properly examine the "intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." (Doc. 14, at 21-22).

The Commissioner has failed to articulate the basis for his prior litigation position concerning this error, thus failing to carry his burden to show that his litigation position was substantially justified. *See Scarborough v. Principi,* 541 U.S. at 416; *United States v. True*, 250 F.3d at 419 n.7. Given the significance of the errors noted in the prior R&R, as well as the lack of explanation of the Commissioner's litigation position with respect to the ALJ's error in assessing Plaintiff's subjective complaints of pain and credibility, this Court concludes that the Commissioner's position was not substantially justified.

**C. Attorney's Fees**

**1. Calculation of Fee Award**

The EAJA authorizes an award of reasonable fees as follows:

> The amount of fees awarded…shall be based upon prevailing market rates for the kind and quality of the services furnished, except that…attorneys fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. §2412(d)(2)(A).

The Sixth Circuit has stated that the $125.00 "statutory rate is a ceiling and not a floor." *Chipman v. Secretary of Health and Human Serv.,* 781 F.2d 545, 547 (6th Cir. 1986). In *Begley v. Secretary of Health and Human Serv.,* 966 F.2d 196 (6th Cir. 1992), the Sixth Circuit interpreted "*Chipman* as a specific instruction not to use [$125.00] as a *minimum* hourly fee and a more general command to district courts to

carefully consider, rather than rubber stamp, requests for adjusted fee awards based on inflation." *Id.* at 200 (emphasis in the original).

Therefore, a plaintiff seeking a higher hourly rate bears the burden of producing appropriate evidence to support the requested increase. *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). In *Bryant*, the Sixth Circuit upheld a district court's rejection of a higher proposed rate where the plaintiffs "submitted only the Department of Labor's Consumer Price Index, arguing that the rate of inflation supported an increase in fees." Reviewing this scant evidence, the Sixth Circuit clearly held: "This is not enough." *Id.* Plaintiffs "must 'produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 450, quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

The Commissioner's brief is silent concerning the hourly fee proposed by Plaintiff and the number of hours claimed by counsel. On the Court's own review, the undersigned concludes the hourly rate should be limited to $125.00 per hour, because Plaintiff has not met the burden of producing satisfactory evidence that the requested attorney's fees are comparable to the rates prevailing in her community. *See Bryant*, 578 F.3d at 450.

Plaintiff's counsel has filed an affidavit as an exhibit to her motion for attorney's fees (Doc. 20-2). In the affidavit, counsel discusses her educational background and years of experience specializing in Social Security and Worker's Compensation claims. (*See* Doc. 20-2 at 1-2). Plaintiff's counsel also details the time expended on this case.

However, she provides no evidence pertaining to the rate of inflation since the last cost of living adjustment under EAJA, nor does she provide comparable hourly rates of attorneys with similar experience in the community. Plaintiff's counsel simply has not offered sufficient evidence under *Bryant* to justify an hourly award above the $125.00 statutory rate.[2]

In Plaintiff's Schedule A, Plaintiff's counsel asserts a total number of 26.75 hours worked on this case, including the preparation of the EAJA fee petition, which is compensable pursuant to *Commissioner v. Jean*, 496 U.S. 154, 162 (1990). (Doc. 20-3). The undersigned concludes that the expenditure of 26.75 hours is reasonable, and that the time records are sufficiently detailed for this Court to conclude that all of the claimed time was relevant to the litigation of this matter. Compensation for the 26.75 hours worked at an hourly rate of $125.00 yields an attorney fee of $3,343.75.

### 2. Assignment of Fees

Plaintiff requests that the entirety of her EAJA fee award be delivered directly to her counsel, Lisa S. Hollifield. This request is supported both by the terms of Plaintiff's "Fee Contract," which contains an assignment of EAJA fees, and by Plaintiff's affidavit. (*See* Docs. 20-4, 20-5).

Regardless of Plaintiff's affidavit and the express terms of the fee agreement, the check must be administered to the Plaintiff in order to permit the United States Government the opportunity to offset any debt potentially owed by Plaintiff to the Government. The United States Supreme Court has clarified that any fees awarded to a prevailing party under EAJA belong to the litigant, not to the litigant's attorney. *See*

---

[2] Following *Bryant,* counsel is required to supply the Court with evidence to support the requested rate, such as affidavits from other attorneys in the community stating their billing rates, or other verifiable evidence regarding those rates.

*Astrue v. Ratliff*, 560 U.S. ___, 130 S. Ct. 2521, 2524 (2010). Absent confirmation that Plaintiff owes no debt to the Government, the Plaintiff's request for delivery of the fee award directly to her attorney cannot be honored.

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Attorney's Fees under the EAJA (Doc. 21) be **GRANTED IN PART,** to the extent that the Commissioner should pay to Plaintiff directly a fee award in the amount of **$3,343.75**, reflecting 26.75 attorney hours reasonably expended multiplied by the statutory hourly rate of $125.00, subject to any offset permitted by *Astrue v. Ratliff*, 560 U.S. ___, 130 S.Ct. 2521 (June 14, 2010). If the parties confirm that Plaintiff owes no debt to the Government, the Commissioner alternatively should be permitted to pay the fee award to Plaintiff's counsel in accordance with the fee contract.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TONI WALLACE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-382

Beckwith, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).